# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KRISTINE BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 06-4025-JPG |
| | ) | |
| JOHNSON & JOHNSON, ORTHO-McNEIL | ) | |
| PHARMACEUTICAL, INC., and JOHNSON & | ) | |
| JOHNSON PHARMACEUTICAL | ) | |
| RESEARCH AND DEVELOPMENT, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW Plaintiff, by and through undersigned counsel, Schlichter, Bogard &

Denton, and for her First Amended Complaint against Defendants, Johnson & Johnson, Ortho-

McNeil Pharmaceutical, Inc., and Johnson & Johnson Pharmaceutical Research and

Development, LLC, f/k/a R.W. Johnson Pharmaceutical Research Institute, and states as follows:

### Parties and Jurisdiction

1.      Plaintiff is domiciled in Carrier Mills, Saline County, Illinois located within the

Southern District of Illinois.  Plaintiff alleges an amount in controversy in excess of Seventy-

Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

2.      Defendant Johnson & Johnson is a New Jersey corporation with its principal place

of business in New Brunswick, New Jersey.  Defendant Johnson & Johnson is the parent

company of Defendant Ortho-McNeil Pharmaceutical, Inc. and Defendant Johnson & Johnson

Pharmaceutical Research and Development, LLC.

1

3. At all times relevant, Defendant Johnson & Johnson was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, the prescription drug Ortho Evra transdermal contraceptive patch (hereinafter "Ortho Evra"), either directly or through its wholly-owned subsidiaries.

4. Defendant Ortho-McNeil Pharmaceutical, Inc. is a Delaware corporation with its principal place of business in Raritan, New Jersey. Defendant Ortho-McNeil Pharmaceutical, Inc. is a subsidiary of Johnson & Johnson.

5. At all times relevant, Defendant Ortho-McNeil was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, the prescription drug Ortho Evra.

6. Defendant Johnson & Johnson Pharmaceutical Research and Development, LLC is a New Jersey Domestic Limited Liability Company with its principal place of business in Raritan, New Jersey. Defendant Johnson & Johnson Pharmaceutical Research and Development, LLC is a subsidiary of Johnson & Johnson, and was previously known as R.W. Johnson Pharmaceutical Research Institute. All members of Johnson & Johnson Pharmaceutical Research and Development, LLC are citizens of the State of New Jersey. The following members are domiciled in Raritan, New Jersey: H. Weisman, President and Chief Executive Officer; M. Guinan, Vice-President and Treasurer; M. Jackson, Vice President; and Ortho-McNeil Pharmaceutical, Inc. The following member is domiciled in New Brunswick, New Jersey: B. Plantz, Secretary.

2

7.     At all times relevant, Defendant Johnson & Johnson Pharmaceutical Research and Development, LLC was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, the prescription drug Ortho Evra.  Hereinafter Johnson & Johnson, Ortho-McNeil Pharmaceutical, Inc. and Johnson & Johnson Pharmaceutical Research and Development, LLC will be collectively referred to as "Defendants".

8.     This court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9.     Venue in this district is appropriate under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred in this District.  Furthermore, the Defendants collectively have marketed, sold, distributed or otherwise distributed Ortho Evra within the Southern District of Illinois.

## Factual Background

10.     On or about late October, 2005 to early November, 2005, Plaintiff suffered blood clots, dizziness and fatigue as a proximate result of her use of Ortho Evra.

11.     Defendants market Ortho Evra as the first and only once-a-week birth control patch.

12.     Defendants market Ortho Evra as providing the same efficacy as birth control pills in preventing pregnancy, but with more convenience than birth control pills because it is worn on the skin for three consecutive weeks, with the fourth week being "patch free."

13. Defendants claim that Ortho Evra helps prevent pregnancy the same way birth control pills do by preventing ovulation, by thickening the cervical mucus, and by changing the endometrium to reduce the chance of implantation.

14. Unlike birth control pills, Ortho Evra is transdermal, meaning continuous levels of the hormones norelgestromin and ethinyl estradiol (progestin and estrogen, respectively) are delivered through the skin into the bloodstream.

15. In response to the question of whether there are any side effects associated with Ortho Evra, Defendants claim that the most frequent adverse event leading to discontinuation include nausea and/or vomiting, application site reaction, breast symptoms, headache, and emotional liability.

16. Defendants failed to warn consumers and their health care providers that the Ortho Evra transdermal birth control patch is more likely to cause blood clots than oral contraceptives, particularly those classified as second generation oral contraceptives.

17. Adverse event records from the Food and Drug Administration show that a significantly higher number of women using the birth control patch reportedly suffered injury or death due to blood clots, compared to women using oral contraceptives. Defendants own clinical trials revealed a higher rate of venous thromboembolism in women on the patch compared to those using oral contraceptives in the study.

18. Defendants concealed the extent of the side effects from the public, including the Plaintiff, and her prescribing physician(s).

19. October 17, 2005, plaintiff's doctor prescribed the Ortho Evra transdermal birth control patch for her use. She began using the patch on either October 17 or 18, 2005.

20.   Within the first two weeks of using Ortho Evra, Plaintiff experienced blood clots, suffered dizziness and felt as if she would pass out. Plaintiff informed her physician of these events in November, 2005 at a follow up appointment. Plaintiff's physician reassured her Ortho Evra was safe and instructed her to continue using the patch.

21.   Plaintiff continued to wear Ortho Evra, as instructed by her doctor, but continued to suffer from passing blood clots, weakness and fatigue. Plaintiff discontinued the patch on or about December 1, 2005.

22.   Prior to Plaintiff's injury, Defendants knew or should have known that use of the Ortho Evra transdermal birth control patch created a higher risk of thromboembolism adverse events than oral contraceptives and that, when used as directed, such use was unreasonably dangerous to consumers.

23.   Therefore, at the time Plaintiff used Ortho Evra, Defendants knew or should have known that the use of Ortho Evra created an increased risk to consumers of serious personal injury, including deep vein thrombosis, pulmonary embolism, thrombi, and even death.

24.   Despite the fact that Defendants knew or should have known of the serious health risks associated with the use of Ortho Evra, Defendants failed to warn Plaintiff and/or her health care providers of said serious risks before she used the product.

25.   Had Plaintiff and/or her health care providers known the risks and dangers associated with Ortho Evra, she would not have used Ortho Evra and would not have suffered injuries and damages.

26.   As a direct and proximate results of Plaintiff's use of Ortho Evra, Plaintiff has suffered significant harm, conscious pain and suffering, physical injury and bodily impairment, including but not limited to permanent physical effects, and which will continue in the future to

cause her physical effects and damage which will affect her throughout her lifetime. Further, as a direct and proximate result of Plaintiff's use of Ortho Evra, Plaintiff suffered significant mental anguish and emotional distress, and will continue to suffer physical limitations, pain, injury, damages, harm, and mental and emotional distress in the future. Plaintiff has also incurred medical expenses and other economic harm including lost earnings, and will continue to incur expenses and lost earnings in the future, as a direct and proximate result of her use of Ortho Evra.

## Count I
### Strict Liability--Defective Manufacturing

27. Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

28. Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Ortho Evra.

29. Ortho Evra, manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants, was defective in its manufacture and construction when it left the hands of Defendants in that it deviated from product specifications, posing a serious risk of injury and death, and was otherwise unreasonably dangerous when used by consumers.

30. As a direct and proximate result of Plaintiff's use of Ortho Evra as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future as alleged in paragraph 26.

## Count II
## Strict Product Liability -- Design Defect

31. Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

32. Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Ortho Evra.

33. Ortho Evra, manufactured and supplied by Defendants, was defective in design or formulation in that, when it left the hands of the Defendants, the foreseeable risks of the product exceeded the benefits associated with its design or formulation, or it was unreasonably dangerous when put to use by the ordinary consumer.

34. The foreseeable risks associated with the design or formulation of Ortho Evra, include, but are not limited to, the fact that the design or formulation of Ortho Evra is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

35. As a direct and proximate result of Plaintiff's use of Ortho Evra as manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by Defendants, Plaintiff suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future as alleged in paragraph 26.

36. Defendants' actions and omissions demonstrate a flagrant disregard for human life, warranting the imposition of punitive damages.

## Count III
## Strict Products Liability -- Defect Due to Inadequate Warning

37. Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

38. Ortho Evra, manufactured and supplied by Defendants, was defective due to inadequate warning or instruction because Defendants knew or should have known that the product created significant risks of serious bodily harm and death to consumers and they failed to adequately warn consumers and/or their health care providers of such risks.

39. Ortho Evra, manufactured and supplied by Defendants, was defective due to inadequate post-marketing warning or instruction because, after Defendants knew or should have known of the risk of serious bodily harm and death from the use of Ortho Evra, Defendants failed to provide an adequate warning to consumers and/or their health care providers of the product, knowing the product could cause serious injury and death.

40. As a direct and proximate result of Plaintiff's use of Ortho Evra as manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by Defendants, Plaintiff suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future as alleged in paragraph 26.

41. Defendants' actions and omissions demonstrate a flagrant disregard for human life, warranting the imposition of punitive damages.

## Count IV
### Strict Products Liability Defect Due to Nonconformance With Representations

42. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

43. Defendants are the manufacturers, designers, distributors, sellers or suppliers of Ortho Evra and made representations regarding the character or quality of Ortho Evra.

44. Ortho Evra, manufactured and supplied by Defendants, was defective in that, when it left the hands of Defendants, it did not conform to representations made by Defendants concerning the product.

45. Plaintiff justifiably relied upon Defendants' representations regarding Ortho Evra when she used Ortho Evra.

46. As a direct and proximate result of Plaintiff's use of Ortho Evra and her reliance on Defendants' representations regarding the character and quality of Ortho Evra, Plaintiff suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future as alleged in paragraph 26.

47. Defendants' actions and omissions demonstrate a flagrant disregard for human life, warranting the imposition of punitive damages.

## Count V
## Negligence

48. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

49. Defendants had a duty to exercise reasonable care in the design, manufacture, sale and/or distribution of Ortho Evra into the stream of commerce, including a duty to assure that its product did not pose a significantly increased risk of bodily harm and adverse events.

50. Defendants failed to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions and distribution of Ortho Evra into interstate commerce in that Defendants knew or should have known that the product caused such significant bodily harm or death and was not safe for use by consumers.

51. Defendants also failed to exercise ordinary care in the labeling of Ortho Evra and failed to issue to consumers and/or their health care providers adequate warnings of the risk of serious bodily injury or death due to the use of Ortho Evra

52. Despite the fact that Defendants knew or should have known that Ortho Evra posed a serious risk of bodily harm to consumers, Defendants continued to manufacture and market Ortho Evra for use by consumers.

53. Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

54. As a direct and proximate result of Defendant's negligence, Plaintiff has suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future as alleged in paragraph 26.

55. Defendants' conduct as described above, including but not limited to its failure to adequately test Ortho Evra, to provide adequate warnings, and its continued manufacture, sale and marketing of the product when it knew or should have known of the serious health risks it created, evidences a flagrant disregard of human life so as to warrant the imposition of punitive damages, particularly when marketed to a class of consumers such as plaintiff.

## Count VI
## Breach of Express Warranty

56. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

57. Defendants expressly warranted that Ortho Evra was a safe and effective prescription contraceptive.

58. Ortho Evra, manufactured and sold by Defendants, did not conform to these express representations because it caused serious injury to consumers when used in recommended dosages.

59. As a direct and proximate result of Defendants' breach of warranty, Plaintiff has suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future as alleged in paragraph 26.

## Count VII
## Breach of Implied Warranty

60. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

61. At the time Defendants designed, manufactured, marketed, sold, and distributed Ortho Evra for use by Plaintiff, Defendants knew of the use for which Ortho Evra was intended and impliedly warranted the product to be of merchantable quality and safe for such use.

62. Plaintiff reasonably relied upon the skill and judgment of Defendants as to whether Ortho Evra was of merchantable quality and safe for its intended use and upon Defendants' implied warranty as to such matters.

63. Contrary to such implied warranty, Ortho Evra was not of merchantable quality or safe for its intended use, because the product was reasonably dangerous as described above.

64. As a direct and proximate result of Defendants' breach of warranty, Plaintiff has suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future as alleged in paragraph 26.

## Count VIII
## Intentional Misrepresentation and Fraud

65. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

66. Defendants had actual knowledge based upon studies, published reports, adverse events reported to the FDA, and clinical experience that Ortho Evra created an unreasonable risk of serious bodily injury and death to consumers.

67. Defendants intentionally omitted this information in its product labeling, promotions and advertisements and instead labeled, promoted and advertised its product as safe in order to avoid losses and sustain profits in its sales to consumers.

68. Plaintiff reasonably relied, to her detriment, upon Defendants' fraudulent actions and omissions in its labeling, advertisements, and promotions concerning the serious risks posed by the product. Plaintiff reasonably relied upon Defendants' representations to Plaintiff and/or her health care providers that Ortho Evra was safe to wear and/or use and that Defendants' labeling, advertisements and promotions fully described all known risks of the product.

69. As a direct and proximate result of Defendants' fraudulent and/or intentional misrepresentations, Plaintiff used Ortho Evra and has suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future as alleged in paragraph 26.

70. Defendants' actions and omissions as identified in this Complaint demonstrate a flagrant disregard for human life, so as to warrant the imposition of punitive damages.

**Count IX**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**

71. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

72. At all times relevant, the Illinois Consumer Fraud & Deceptive Practices Act, 815 ILCS 505/1 et seq., (hereinafter "IFCA") prohibits "the use of any deception, fraud, false pretense, false promise, misrepresentation or concealment, suppression or omission of any

12

material fact…in the conduct of any trade or commerce" and declares such acts or practices as unlawful.

73.     Defendants violated the IFCA by the use of false and misleading misrepresentations or omissions of material fact in connection with the marketing, promotion, and sale of Ortho Evra. Defendants communicated the purported benefits of Ortho Evra while failing to disclose the serious and dangerous side effects related to the use of Ortho Evra with the intent that consumers, like Plaintiff, and their healthcare providers rely upon the omissions and misrepresentations and purchase or prescribe Ortho Evra, respectively.

74.     As a result of violating the ICFA, Defendants caused Plaintiff to be prescribed and to use Ortho Evra, causing severe injuries and damages as previously described herein in paragraph 26.

## JURY DEMAND

75.     Plaintiff hereby demands a trial by jury.

**WHEREFORE**, for the foregoing reasons, Plaintiff prays for relief against all defendants as follows:

1.     Compensatory and punitive damages in excess of the jurisdictional amount;

2.     Attorneys' fees, expenses, and costs of this action as a result of a Violation of the Illinois Consumer Fraud & Deceptive Practices Act; and

3.     Such further relief as this Court deems necessary, just and proper.

Respectfully submitted,

/s/ Jerome J. Schlichter
Roger C. Denton (#13542)
Jerome J. Schlichter (#13970)
SCHLICHTER, BOGARD & DENTON
100 South 4th Street, Suite 900
St. Louis, MO 63102
(314) 621-6115 telephone
(314) 621-7151 facsimile
rdenton@uselaws.com
jschlichter@uselaws.com

ATTORNEYS FOR PLAINTIFF

**PROOF OF SERVICE**

I hereby certify that on April 12, 2006, I electronically filed the foregoing documents with the Clerk of the Court using CM/ECF system which will send notification of such filing to the following:

Mr. Robert H. Schultz, Jr.    rschultz@hrva.com

Mr. W. Wylie Blair    wblair@hrva.com

/s/ Jerome J. Schlichter
Schlichter, Bogard & Denton